## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

|  |  |
|---|---|
| IN RE:<br><br>ITT EDUCATIONAL SERVICES, INC., *et al.*,<br><br>          Debtors.<br>_____<br><br>DEBORAH J. CARUSO, the CHAPTER 7 TRUSTEE for ITT EDUCATIONAL SERVICES, INC., ESI SERVICE CORP. and DANIEL WEBSTER COLLEGE, INC.,<br><br>          Plaintiff,<br>   vs.<br><br>KEVIN MODANY, JOHN E. DEAN, C. DAVID BROWN II, JOANNA T. LAU, THOMAS I. MORGAN, JOHN VINCENT WEBER, JOHN F. COZZI, SAMUEL L. ODLE, and JERRY M. COHEN,<br><br>          Defendants. | Case No. 16-07207-JMC-7A<br><br>Jointly Administered<br><br><br><br>Adversary Proceeding No. 18-50100 |

**DEFENDANT KEVIN MODANY'S AMENDED\* MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS THE ADVERSARY COMPLAINT**

\*Amended solely to correct formatting.  No substantive changes were made.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. iii

I.     INTRODUCTION ....................................................................................................... 1

II.    APPLICABLE LAW ................................................................................................... 3

    A.    Delaware Law Applies to the Breach of Fiduciary Duty Claims ......................... 3

    B.    Standard of Law on a Motion to Dismiss ............................................................ 3

III.    ARGUMENT ............................................................................................................... 4

    A.    The Complaint Fails to Adequately Plead Breach of Fiduciary Duty .................. 4

        1.    The Complaint Fails to Adequately Plead a Breach of the Duty of Care as to Modany. ....................................................................... 5

            a.    Modany's Alleged Failure to Respond to ACICS and ED or to Preserve ITT's Value Are Contradicted by Exhibit C and Other Allegations. ............................................................... 6

            b.    The Trustee's Allegations as to ITT's Financial Condition Are Misleading and Belied by the Trustee's Referenced Sources. ......................................................................................... 8

            c.    The Trustee's Allegation That Modany Failed to Investigate Starcore's Offer Fails to Plead Gross Negligence or Provide for an Inference of Gross Negligence ....................................................................................... 9

        2.    The Complaint Fails to Adequately Plead a Breach of the Duty of Loyalty. ....................................................................................... 10

            a.    Complaint fails to plead self-dealing. ......................................... 13

            b.    Complaint fails to plead that Modany put his personal interests ahead of ITT's. .......................................................... 13

                i.    Allegations of the mere existence of compensation and employment benefits and the severance plan are insufficient to allege that Modany took any action out of self-interest. ............................................................. 13

                ii.    The allegation that Modany did not resign is insufficient to allege self-interest. .................................... 15

                iii.    The allegation that Modany did not admit to fraud fails to state self-interest. .................................................. 16

## TABLE OF CONTENTS
(continued)

Page

    iv.    Allegations that Modany was in favor of or opposed to certain potential transactions or hiring decisions fail to allege self-interest.................................................. 17

    v.    The Foregoing Allegations, Taken Collectively, Are Insufficient to State a Claim of the Breach of Duty of Loyalty. ...................................................................... 22

    3.    The Complaint Fails to Adequately State a Claim for Breach of the Duty of Good Faith. ........................................................................... 22

  B.    The Complaint Fails to State a Claim for Equitable Subordination ................... 26

    1.    Equitable Subordination Under Section 510(c) of the Bankruptcy Code is Not Available Here. .................................................... 26

    2.    Section 105(a) of the Bankruptcy Code Does Not Offer an Alternative Basis for Equitable Subordination. ....................................... 27

IV.    CONCLUSION .............................................................................................. 28

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Am. Commercial Lines LLC v. Lubrizol Corp.*,
No. 4:12-CV-00135-SEB, 2014 WL 6673606 (S.D. Ind. Nov. 24, 2014) ...............................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................................4, 16, 22

*Beard Research, Inc. v. Kates*,
8 A.3d 573 (Del. Ch. 2010).......................................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................................4

*Benihana of Tokyo v. Benihana*,
891 A.2d 150 (Del. Ch. 2005)...................................................................................................5

*Burtch v. Houston (In re US Digital)*,
443 B.R. 22 (Bankr. D. Del. 2011) ...........................................................................................4

*Cede & Co. v. Technicolor, Inc.*,
634 A.2d 345 (Del. 1993) ...............................................................................................5, 10, 13

*DiLeo v. Ernst & Young*,
901 F.2d 624 (7th Cir. 1990) ...................................................................................................17

*Freedman v. Adams*,
No. CIV.A. 4199-VCN, 2012 WL 1345638 (Del. Ch. Mar. 30, 2012) ...........................13, 14

*Gantler v. Stephens*,
965 A.2d 695 (Del. 2009) ...........................................................................................................5

*Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chi.*,
927 F.2d 988 (7th Cir. 1991) ...................................................................................................16

*Grobow v. Perot*,
539 A.2d 180 (Del. 1988) ...................................................................................................13, 14

*Huff Energy Fund, L.P. v. Gershen*,
No. CV 11116-VCS, 2016 WL 5462958 (Del. Ch. Sept. 29, 2016)................................15, 25

*In re Caremark Int'l Inc. Derivative Litig.*,
698 A.2d 959 (Del. Ch. 1996).............................................................................................23, 24

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re E. Livestock Co.*,
   547 B.R. 277 (Bankr. S.D. Ind. 2016) ...............................................................................3, 4

*In re Fedders N. Am., Inc.*,
   405 B.R. 527 (Bankr. D. Del. 2009) .................................................................10, 13, 19, 25

*In re Kreisler*,
   546 F.3d 863 (7th Cir. 2008) .........................................................................................26

*In re Liquid Holdings Grp., Inc.*,
   No. 17–50662 (KG), 2018 WL 2759301 (Bankr. D. Del. June 6, 2018)................4, 10, 13, 25

*In re Novell, Inc. S'holder Litig.*,
   2013 WL 322560 (Del. Ch. Jan. 3, 2013) ..............................................................15

*In re Think3, Inc.*,
   549 B.R. 147 (Bankr. W.D. Tex. 2015)..................................................................23

*In re Walt Disney Co. Derivative Litig.*,
   906 A.2d 27 (Del. 2006) ...................................................................10, 22, 23, 24

*In re Walt Disney Co. Derivative Litig.*,
   907 A.2d 693 (Del. Ch. 2005)............................................................................5

*Jedwab v. MGM Grand Hotels, Inc.*,
   509 A.2d 584 (Del. Ch. 1986)..........................................................................17

*Joyce v. Cuccia*,
   1997 WL 257448 (Del.Ch. May 14, 1997)........................................................10

*Law v. Siegel*,
   571 U.S. 415 (2014)........................................................................................28

*Long v. Shorebank Dev. Corp.*,
   182 F.3d 548 (7th Cir. 1999) ...........................................................................4

*Mann v. GTCR Golder Rauner, L.L.C.*,
   483 F. Supp. 2d 884 (D. Ariz. 2007) ...............................................................17

*Matter of Lifschultz Fast Freight*,
   132 F.3d 339 (7th Cir. 1997) ......................................................................26, 27

*Miller v. McDonald* (*In re World Health Alternatives, Inc.*),
   385 B.R. 576 (Bankr. D. Del. 2008) ................................................................23

iv

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Nagy v. Riblet Prod. Corp.*,
    79 F.3d 572 (7th Cir. 1996) ..................................................................................3

*Orman v. Cullman*,
    794 A.2d 5 (Del. Ch. 2002)............................................................................15, 16

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) ................................................................................17

*Rosenblum v. Travelbyus.com Ltd.*,
    299 F.3d 657 (7th Cir. 2002) ................................................................................22

*Sender v. Bronze Grp. (In re Hedged-Invs. Assocs.)*,
    380 F.3d 1292 (10th Cir. 2004) ......................................................................26, 27

*Stone ex rel. AmSouth Bancorporation v. Ritter*,
    911 A.2d 362 (Del. 2011) ...............................................................................22, 23

*Strassburger v. Earley*,
    752 A.2d 557 (Del. Ch. 2000)...............................................................................13

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................................9

*Thompson v. Ill. Dep't of Prof'l Regulation*,
    300 F.3d 750 (7th Cir. 2002) .................................................................................7

*United States v. Noland*,
    517 U.S. 535 (1996)..............................................................................................26

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
    20 F.3d 771 (7th Cir. 1994) ..................................................................................17

**STATUTES**

Bankruptcy Code
    ch. 7.............................................................................................................1, 2, 27
    § 105..................................................................................................................2, 28
    § 510............................................................................................................ *passim*

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**RULES**

Fed. R. Bankr. P.
   7008.................................................................................................................3
   7012.................................................................................................................1

Fed. R. Civ. P.
   8.....................................................................................................................3
   9..............................................................................................................16, 17
   10...............................................................................................................2, 7
   12...........................................................................................................*passim*

Fed. R. Evid. 201 .............................................................................................2, 9

**OTHER AUTHORITIES**

Restatement (Second) of Conflict of Laws § 309 (1971) ..................................3

Defendant Kevin Modany ("Modany"), by and through his undersigned counsel, respectfully files this Memorandum in Support of his Motion to Dismiss the Adversary Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), incorporated by Federal Rule of Bankruptcy Procedure 7012(b) ("Rule 12(b)(6)"), with respect to the Adversary Complaint, Dkt. 2562, ("Complaint") filed by Deborah J. Caruso (the "Trustee" or the "Plaintiff"), as trustee of the chapter 7 estate of ITT Corp. ("ITT") against Modany and certain members of ITT's board of directors (the "Directors," and collectively with Modany, the "Defendants").

## I.   **INTRODUCTION**

Before its closure, ITT provided technology-oriented undergraduate and graduate degree programs through its accredited postsecondary institutions, ITT Technical Institute ("ITT Tech") and Daniel Webster College ("DWC"). ITT filed for protection under chapter 7 of the Bankruptcy Code on September 16, 2016, with its subsidiaries, DWC and ESI Service Corp. ("ESI"). The Plaintiff is the chapter 7 trustee appointed in those cases.

Releases granted to Modany, including by ITT, in connection with prior settlements have the effect of limiting the Trustee's collection efforts to alleged claims arising during a narrow period – the so-called "Crisis Period" – that might be covered by ITT's director and officer liability insurance program (thus providing the Trustee with the only substantial avenue for recovery to the estate). Because the claims that the Trustee might otherwise assert are not available – having been released with no admission of wrongdoing or liability – the Trustee is left with a few circumstances and a handful of correspondence, which she pastes together with innuendo.[1] Her Complaint cannot satisfy Rule 12(b)(6) and must be dismissed.

---

[1]   None of the Trustee's referenced emails was actually attached to the Complaint, so the reader – both the Court and the Defendants – are left solely with a few excerpted comments that the Trustee asserts as evidence of the Defendants' alleged breaches.

The Complaint alleges that conflicts of interest – primarily, his interest in remaining employed or in collecting his severance package – prevented Modany, the former CEO of ITT, from taking actions to protect and preserve ITT's assets during the five-month period preceding its chapter 7 bankruptcy, amounting to breach of fiduciary duty.  Complaint, ¶ 66.  The Trustee also seeks to equitably subordinate Modany's claim in the bankruptcy, based on the same nexus of facts that she cites in support of her breach of fiduciary duty claim.  *Id*.  ¶¶ 68-72.

The Trustee has not pleaded claims for breach of fiduciary duty.  Stripped of conclusory allegations, the asserted facts do not support a claim.  Moreover, the facts contained in the documents the Trustee attached to the Complaint – which the Court can consider to be a part of the Complaint under Rule 10(c) – contradict the claims asserted.  The Court also may take judicial notice under Federal Rule of Evidence 201 of ITT's quarterly reports on Form 10-Q filed with the Securities and Exchange Commission, which also contain facts contradicting the claims asserted.

The Complaint also fails to explain why Modany's claim against the ITT bankruptcy estate should be subordinated under Section 510(c) of the Bankruptcy Code.  The Trustee has failed to allege Modany willfully breached his fiduciary duty such that equitable subordination is warranted, and has not attempted to offer another basis that satisfies the three-prong test approved by the Seventh Circuit.  Contrary to the Trustee's assertion, because another section of the Bankruptcy Code explicitly applies, Section 105(a) of the Bankruptcy Code cannot offer an alternative basis for equitable subordination.

Finally, to the extent the Complaint is filed on behalf of ESI and DWC, whose chapter 7 cases are being jointly administered with that of ITT, the Complaint alleges no facts, claims or theory of liability.  Modany should not be required to speculate about what he is required to defend.  Given this wholesale failure to plead, the Court should dismiss the Complaint as to the DWC and

ESI estates.  In sum, the Complaint fails on its face and should be dismissed as to Modany.

## II.  **APPLICABLE LAW**

### A.  *Delaware Law Applies to the Breach of Fiduciary Duty Claims*

The Complaint is silent as to the law that applies to the asserted breach of fiduciary duty claims.  Because ITT is a Delaware corporation, Delaware law applies under both federal common law and Indiana law conflicts of law principles.  "[F]ederal common law generally follows the Restatement (Second) of Conflict of Laws."  *In re E. Livestock Co.*, 547 B.R. 277, 284 (Bankr. S.D. Ind. 2016).  Under the Restatement, "[t]he local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders, except where, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the parties and the transaction, in which event the local law of the other state will be applied."  Restatement (Second) of Conflict of Laws § 309 (1971).

Likewise, Indiana's choice of law rules likely require application of the law of the state of incorporation to a breach of fiduciary duty claim.  *Nagy v. Riblet Prod. Corp.*, 79 F.3d 572, 576 (7th Cir. 1996), *certified question answered*, 683 A.2d 37 (Del. 1996) (concluding Indiana likely follows the internal affairs doctrine, which applies the law of the place of incorporation to actions regarding intra-corporate affairs).  The Complaint does not suggest that any other state has a more significant relationship to the parties or any transaction such that such state's law should be applied.  Absent some extenuating circumstance that has not been disclosed, both federal common law and Indiana choice of law rules require the application of the law of the state of Delaware.

### B.  *Standard of Law on a Motion to Dismiss*

An adversary complaint may be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.  *See also* Fed. R. Bankr. P. 7008; Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain

statement of the claim showing that the pleader is entitled to relief"). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (Souter, J., dissenting) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if it contains well-pled factual allegations that, if accepted as true, allow the court to draw a "reasonable inference" that a defendant is liable for the conduct alleged; the "sheer possibility that a defendant has acted unlawfully" is not enough. *Id.* at 678. A complaint must contain enough factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks and citation omitted); *accord E. Livestock Co.*, 547 B.R. at 280. Conclusory statements and legal conclusions that are not supported by specific facts fail to satisfy Rule 12(b)(6). *Iqbal*, 556 U.S. at 681; *Am. Commercial Lines LLC v. Lubrizol Corp.*, No. 4:12-CV-00135-SEB, 2014 WL 6673606, at *2 (S.D. Ind. Nov. 24, 2014).

When considering a motion to dismiss, a court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Even under this liberal standard, the Complaint's deficiencies warrant dismissal as against Modany.

## III.   **ARGUMENT**

### A.   ***The Complaint Fails to Adequately Plead Breach of Fiduciary Duty***

Under Delaware law, corporate officers owe duties of care and loyalty; the duty of good faith is sometimes considered a "subsidiary element" of the duty of loyalty. *In re Liquid Holdings Grp., Inc.*, No. 17–50662 (KG), 2018 WL 2759301, at *11 (Bankr. D. Del. June 6, 2018) (quoting *Burch v. Houston (In re US Digital)*, 443 B.R. 22, 41 (Bankr. D. Del. 2011)). "A claim for breach of fiduciary duty [under Delaware law] requires proof of two elements: (1) that a fiduciary duty

4

existed and (2) that the defendant breached that duty." *Beard Research, Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749 (Del. 2010). As shown *infra*, the Complaint fails to sufficiently allege that Modany breached *any* duty.

### 1. The Complaint Fails to Adequately Plead a Breach of the Duty of Care as to Modany.

The duty of care requires corporate officers to use that amount of care which "ordinarily careful and prudent [persons] would use in similar circumstances," and to "consider all material information reasonably available." *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 749 (Del. Ch. 2005) [hereinafter *Disney I*] (citations omitted), *aff'd*, 906 A.2d 27 (Del. 2006); *see also Gantler v. Stephens*, 965 A.2d 695, 705-06, 708-09 (Del. 2009) (holding that officers and directors owe the same duties, and applying business judgment rule to claim for breach of officer duty of care). Because of the business judgment rule, however, pleading a breach of the duty of care requires the plaintiff to plead facts that, if proved, amount to gross negligence or "reckless indifference to or a deliberate disregard of the whole body of stockholders or actions which are without the bounds of reason." *Benihana of Tokyo v. Benihana*, 891 A.2d 150, 192 (Del. Ch. 2005) (citation omitted), *aff'd*, 906 A.2d 144 (Del. 2006). Behavior constituting gross negligence depends on the situation, but it generally requires that directors and officers deliberately fail to inform themselves. *See Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 367 (Del. 1993). So long as officers are fully informed and act in good faith, their decisions—even if they turn out to have been wrong or improvident—do not give rise to liability. *Gantler*, 965 A.2d at 705-06, 708-09 (explaining the business judgment rule and concluding the rule applied to claim alleged against officer for breach of duty of care).

The allegations the Complaint attempts to plead fall into three main categories:

First, that Modany failed to seriously and expeditiously respond to concerns of the

5

Accreditation Council for Independent Colleges and Schools ("ACICS"), the agency tasked with monitoring ITT's accreditation, or the U.S. Department of Education ("ED") or explore potential transactions or hiring decisions to preserve ITT's value. *See, e.g.*, Complaint, ¶ 34 (alleging, "given the potentially disastrous consequences that could result from a failure to satisfy the concerns raised in the ACICS Show-Cause Letter, it was also incumbent upon Defendants to seriously and expeditiously explore strategies to maximize ITT's remaining value for the benefit of all of its stakeholders, including exploring potential sales or other transactions that could preserve ITT as a going concern, or at least minimize the loss to ITT's stakeholders"); *see also id.* ¶¶ 2, 24, 25, 29, 41-44, 46, 55.

Second, that Modany failed to cause ITT to perform a solvency analysis. The Complaint alleges, "Defendants disregarded their duties to take concrete steps to limit ITT's liabilities. Among other things, Defendants should have immediately performed a solvency analysis to determine the amount and duration of ITT's potential cash flow, and then explored all potential contingencies[.]" *Id*. ¶ 46.

Third, that Modany failed to investigate Starcore Venture Group's acquisition offer. "On June 14, 2016, ITT received a letter of intent for a potential acquisition by Starcore Venture Group at $2.20 per share. But Defendants refused to investigate the potential value of this offer or engage Starcore in negotiations. Instead, wholly uninformed of the potential value of this offer, the Directors deferred to Modany's recommendation to reject the transaction based on Modany's speculation that it would leave insufficient residual value for shareholders." *Id*. ¶ 44.

These allegations, individually and collectively, do not state a claim for gross negligence.

> **a.** ***Modany's Alleged Failure to Respond to ACICS and ED or to Preserve ITT's Value Are Contradicted by Exhibit C and Other Allegations.***

The majority of allegations concern Modany's alleged failure to seriously and

expeditiously respond to ACICS's and ED's concerns or explore potential transactions or hiring decisions to preserve ITT's value. The Trustee alleges Modany failed to promptly address ACICS's inquiry with respect to a teach-out program and problematic educational materials. Complaint, ¶¶ 2, 24, 25, 29, 41-44, 46. The Complaint also liberally references a letter from ACICS dated August 17, 2016, which allegedly continued ITT's "Show-Cause" status, but which was not attached to the Complaint for reference. *Id*. ¶ 51. The Complaint also notes a letter from ED, dated June 6, 2016 (the "June ED Letter"), "in which ED demanded additional financial assurances from ITT due to increased financial risk to ED, Title IV funds, students, and taxpayers as a result of ACICS' action and ITT's shortcomings that gave rise to such action." *Id*. ¶ 41. Pursuant to the June ED Letter, the ED "required ITT to increase its surety with ED by over 50% to $123,646,182." *Id.* In addition, the Complaint asserts Modany failed to "seriously and expeditiously explore strategies to maximize ITT's remaining value . . . including exploring potential sales or other transactions." *Id*. ¶ 34.

These allegations are directly contradicted by other allegations and documents attached to the Complaint. The documents are considered part of the Complaint pursuant to Fed. R. Civ. P. 10(c), and may be considered by this Court for purposes of this Motion.[2] *See Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) ("[Where] a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim.").

The Complaint itself acknowledges that Modany stated, at the April 25, 2016 board meeting, "the [ACICS] letter increased the need to pursue a transaction as soon as possible to avoid

---

[2]    Under Rule 10(c) "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

any potential collateral consequences of ITT's receipt of the letter."  Complaint, ¶ 29.  In addition, the Complaint concedes that "Modany chose to pursue [a] transaction [with] DCF[.]"  *Id.* ¶ 40.

Furthermore, as alleged in the Complaint, ITT appeared at a hearing before ACICS in early August 2017 to address ACICS's inquiries and concerns.  Complaint, Ex. C, p. 2 (ED letter dated August 25, 2016 (the "August ED Letter"), noting that "on August 4, 2016 ACICS held the hearing regarding the show cause imposed on ITT Technical Institutes in Indianapolis, IN and Spokane Valley, WA").  The August ED Letter states that, following such hearing, ACICS concluded it would maintain ITT's accreditation, and that ACICS "no longer expresse[d] concerns about the quality of instructional materials or development and submission of a teach-out plan."  *Id*.  In addition, while the Complaint asserts that, on June 6, 2016, the ED inquired about ITT's teach-out or similar contingency plan with another institution and for the same information being provided to ACICS, the June ED Letter, attached to the Complaint as Exhibit B, contains no such request.  Complaint, Ex. B.  Rather, as the Complaint acknowledges, the June ED Letter made certain financial demands, which, as the Complaint also acknowledges, ITT met.  Complaint, ¶¶ 41, 48 (noting that ITT had "figured out a way to pay the surety"), Complaint, Ex. C, pp. 1, 3 (acknowledging increase in surety).

The facts set forth in the exhibits to the Complaint directly contradict any assertion that Modany failed to address ACICS's concerns with respect to a teach-out or ITT's educational materials or ED's demands set forth in the June ED Letter.  These allegations cannot support an action for breach of the duty of care.

### b.    *The Trustee's Allegations as to ITT's Financial Condition Are Misleading and Belied by the Trustee's Referenced Sources.*

The Complaint attempts to allege that the Defendant's "fiduciary duties required them to maximize ITT's value for the benefit of its stakeholders, *including its creditors*," Complaint, ¶ 45

(emphasis added), which appears to be an assertion that ITT was insolvent, and, accordingly, that ITT should have, among other things, performed a solvency analysis, "to determine the amount and duration of ITT's potential cash flow." *Id*. ¶¶ 45, 46.  To plead insolvency, the Complaint makes a single assertion, referring to an unattached earnings report that indicated among other things, as of June 30, 2016, "a negative current asset ratio" that "confirmed that ITT was insolvent." *Id*. ¶ 44.  The Trustee's assertion, however, is contradicted by the August 25 Letter, which acknowledges a positive assets-to-liabilities ratio.  Complaint, Ex. C, p. 2 (citing an assets-to-liabilities ratio of .72 included in ACICS's August 17 letter).  In addition, the Complaint references ITT's report on Form 10-Q for the period ended March 30, 2016 for the purpose of indicating that shareholder equity in excess of $108 million and cash and cash equivalents in excess of $162 million.  Complaint, ¶ 2.  The Trustee also referred to ITT's earnings for the period ended June 30, 2016, which ITT, a publicly-held company, filed with the Securities and Exchange Commission ("SEC"), and which also indicated positive shareholder equity and included ITT's cash position.  Although the Trustee failed to attach these public filings, given that the Trustee has made assertions based on parts of the report, this Court may consider them.  *See* Fed. R. Evid. 201(b); *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting that on a motion to dismiss, courts may consider documents incorporated into the complaint by reference, and matters of which a court may take judicial notice, such as public records).

Given these contradictions, the Complaint fails to make any well-pleaded allegation of insolvency, and evidence of the filing of quarterly reports precludes establishing that the alleged failure to perform a solvency analysis constituted gross negligence.

### c.    *The Trustee's Allegation That Modany Failed to Investigate Starcore's Offer Fails to Plead Gross Negligence or Provide for an Inference of Gross Negligence.*

The Trustee alleges that the Defendants failed to investigate Starcore Venture Group's June

2016 offer at $2.20 per share and that Modany provided a "recommendation to reject the transaction based on . . . speculation that it would leave insufficient residual value for shareholders."  Complaint, ¶ 44.  Delaware law does not require an officer to investigate every single potential offer or transaction in order to uphold his or her duty of care.  *See In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 61 (Del. 2006) [hereinafter *Disney II*] (noting the standard of the duty of care of informing oneself of "all information reasonably available").  Furthermore, in light of the number of potential transactions that the Complaint identifies, a single determination not to investigate—in the absence of any allegation that the offer would have been especially favorable to ITT—does not constitute gross negligence.  To hold differently would be to let hindsight dictate the scope of the duty of care.  *See Liquid Holdings Grp.*, 2018 WL 2759301, at *11 (determining inadequate facts pled to establish breach of duty of care when "[t]he Trustee merely states a fact that is apparent in hindsight of [the Corporation's] financial collapse").

### 2.   *The Complaint Fails to Adequately Plead a Breach of the Duty of Loyalty.*

The duty of loyalty requires that the best interests of the corporation and its shareholders take precedence over any interest possessed by the corporation's officers and directors (as well as controlling shareholders)*.  Cede & Co.*, 634 A.2d at 360.  "To state a legally sufficient claim for breach of the duty of loyalty, plaintiffs must allege facts showing that a self-interested transaction occurred, and that the transaction was unfair to the plaintiffs."  *In re Fedders N. Am., Inc.*, 405 B.R. 527, 540 (Bankr. D. Del. 2009) (citing *Joyce v. Cuccia*, 1997 WL 257448, at *5 (Del.Ch. May 14, 1997)).  To allege self-dealing, a plaintiff must plead that the defendants either (1) stood on both sides of a transaction and dictated its terms in a self-dealing way or (2) received a personal benefit that was not enjoyed by the shareholders generally.  *Cede & Co.*, 634 A.2d at 362.

The Complaint fails to plead any *factual* allegation supporting a claim of a breach of the

10

duty of loyalty. Rather, the Complaint attempts to string together strategically-worded assertions to encourage an inference that Modany acted in self-interest and breached his duty of loyalty. These conclusory allegations fail under the Rule 12(b)(6) standard, and the Court should decline to draw the inferences of conflicted interest because the inferences are not reasonable or supported. The Complaint alleges:

First, that Modany received compensation and employment benefits from ITT: "In 2014, ITT paid Modany total compensation of $3,194,632. In 2015, ITT paid Modany total compensation of $1,379,345. Modany's 2016 annualized base compensation was $824,076. He received other benefits, including use of a company car, a tax return preparation and financial planning allowance, tickets to sporting, theater, and other events, and enhanced disability benefits." Complaint, ¶ 11; *see also* Complaint Ex. D, pp 10-19 (Employment Agreement), 23-42 (SESP).

Second, that "Modany was eligible for ITT's Senior Executive Severance Plan, which provided Modany with a handsome severance payment if certain conditions were met, one of which was that Modany not be terminated for cause." Complaint, ¶ 28; *see also id.* ¶ 30 (alleging "payment of the severance benefits is only triggered if a change in control has occurred or is imminent and certain types of termination of employment occur within certain limited time periods").

Third, that Modany refused to resign his position as CEO, even though "ACICS wanted ITT to terminate Modany and that his stepping down would significantly help ITT retain its accreditation." Complaint, ¶ 26. "Upon receipt of the ACICS letter, ITT's then Executive Chairman, John Dean, and Director Cohen acknowledged that ACICS saw Modany 'as part of the problem.' And Modany himself wrote Dean opining that his and Dean's resignations were 'a likely necessary action if we are going to respond with a sufficient politically charged reply' because

'it's almost a certainty that we need to give these guys a dead body!'" *Id*.

Fourth, that Modany refused to plead to fraud. *See, e.g.*, *id*. ¶ 29 ("So, rather than . . . admitting to fraud . . . ."); *id*. ¶ 28 ("Modany was also concerned with the damage to his reputation and future employment prospects if he admitted to fraud . . . ."); *see also id*. ¶¶ 27, 31, 35. The Trustee also asserts Modany breached the duty of loyalty by not causing ITT to similarly admit to fraud in connection with an SEC investigation and subsequent litigation. *Id*. ¶¶ 34, 35 ("The Directors were further advised that the SEC had previously made it clear that it had no interest in a settlement, even in the context of a transaction, without both ITT and the individuals (e.g., Modany) admitting to fraud.").

Fifth, based on the existence of compensation and employment benefits, the condition on severance payments, and Modany's refusal to resign or plead to fraud, Modany "must have" acted self-interestedly. The Complaint alleges that "[s]o, rather than exploring strategies to maximize ITT's remaining value for the benefit of all of its stakeholders, Modany selfishly focused on securing a strategic transaction that would trigger his severance payment and provide him continued employment or some other face-saving exit." *Id.* ¶ 32; *see also id.* ¶ 28 ("Modany was also concerned with the damage to his reputation and future employment prospects if he admitted to fraud or was forced to resign as ITT's CEO."); *id*. ¶ 31 ("Thus, not only was Modany financially interested in crafting the terms of a potential sale of ITT in a manner that maximized the benefits to himself even at the expense of ITT's other constituencies (e.g., its shareholders and creditors), but he also obsessed about protecting his reputational interest. He did not want to enter a strategic deal in which he would not survive as CEO because he feared that the market would perceive him as being forced out by the SEC, AGs, the CFBP, ED or the Board."); *id.* ¶ 49 ("But rather than pursuing ITT's best interests, Modany was only interested in maximizing his severance.").

12

These allegations fail to state a claim of breach of the duty of loyalty under either of the two prongs: (1) self-dealing or (2) a fiduciary putting personal interests ahead of the interests of its beneficiary. *In re Fedders N. Am., Inc.*, 405 B.R. at 540.

### a.    *Complaint fails to plead self-dealing.*

As noted above, self-dealing requires a showing that a self-interested transaction occurred. *Strassburger v. Earley*, 752 A.2d 557, 581 (Del. Ch. 2000); *Cede & Co.*, 634 A.2d at 362; *Liquid Holdings Grp.*, 2018 WL 2759301, at \*15 ("To allege a breach of the duty of loyalty, the Trustee is required to plead at least an inference of a self-interested transaction."). Here, there is no self-dealing to plead, as there is no transaction on which Modany arguably stood on both sides or from which he received a personal benefit that was not enjoyed by the shareholders generally. *See In re Fedders N. Am., Inc.*, 405 B.R. at 540. In fact, Modany received no personal benefit at all.

### b.    *Complaint fails to plead that Modany put his personal interests ahead of ITT's.*

Nor does the Complaint contain facts supporting a claim that Modany put his personal interests ahead of ITT's.

### i.    *Allegations of the mere existence of compensation and employment benefits and the severance plan are insufficient to allege that Modany took any action out of self-interest.*

Delaware law is clear that the mere allegation that a defendant *is compensated* by the debtor for his or her work for the debtor is, in and of itself, insufficient to establish an interest in conflict with that of the debtor. *Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988) (*overruled on unrelated grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)). Therefore, the allegations of the amount of compensation ITT paid to Modany and employment benefits provided to Modany merely state just that—that Modany was compensated for his work for ITT.

In addition, the alleged amount of compensation and employment benefits are not

particularized facts of self-interest.  In *Freedman v. Adams*, the plaintiff pleaded similar details as here regarding salary and other compensation and employment benefits for defendants: "total annual compensation for 2006 and 2007"; "the amount of their cash retainers for 2004 and 2005"; "they received stock options in each of those years"; and "that their compensation increased each year and that they received health benefits, retirement plans, and severance."  No. CIV.A. 4199-VCN, 2012 WL 1345638, at *6 (Del. Ch. Mar. 30, 2012).  On a Rule 12(b)(6) motion, the *Freedman* court observed that "[t]he Plaintiff *did not allege sufficient particularized facts* in the Complaint to show or to allow the Court reasonably to infer that the [defendants]' compensation" that the defendants had a material conflict.  *Id*. (emphasis added).  Likewise, although the Trustee alleges Modany's compensation for 2014, 2015, and 2016, and receipt of other employment benefits such as the use of a car, Complaint, ¶¶ 11, 28, 30, the allegations of the mere existence of compensation and benefits cannot form the factual basis of a material conflict of interest.

The Delaware Supreme Court in *Grobow* made clear that the mere allegation of the existence of compensation cannot even support an *inference* of self-interest.  The plaintiff in *Grobow*, similar to the Trustee, pleaded that the defendants were paid for their services and that the payment was the basis of self-interest.  The Delaware Supreme Court affirmed the chancery court's dismissal of the complaint and noted, regarding the lack of factual allegations of self-interest and the unreasonable inference that plaintiff urged, "[t]he only averment permitting such an inference [of financial interest on the part of the directors] is the allegation that all GM's directors are paid for their services as directors.  *However, such allegations, without more, do not establish any financial interest*."  *Grobow*, 539 A.2d at 188 (emphasis added).  Therefore, that Modany stood to receive financial benefit from his continued employment at ITT provides neither a factual basis nor a reasonable inference of self-interest—it is simply not enough.

14

Similarly, the allegation that Modany's severance payment is subject to the condition that his termination is not for cause—a common condition in severance agreements—does not create a disqualifying self-interest.  The existence of the possibility of receiving severance does not state a conflicting interest.  *Huff Energy Fund, L.P. v. Gershen*, No. CV 11116-VCS, 2016 WL 5462958, at *11 (Del. Ch. Sept. 29, 2016) (granting motion to dismiss and noting "possibility of receiving change-in-control benefits pursuant to pre-existing employment agreements does not create a disqualifying interest as a matter of law" (citing *In re Novell, Inc. S'holder Litig.*, 2013 WL 322560, at *11 (Del. Ch. Jan. 3, 2013)).  In other words, the possibility that Modany might have received a severance payment if certain conditions were met is insufficient to allege self-interest and cannot form the basis of any factual allegation that Modany took certain positions with regard to potential transaction or hiring decisions because of this possibility.  To the extent the claim of breach of the duty of loyalty depends on these allegations, it fails as a matter of law.

### ii.  The allegation that Modany did not resign is insufficient to allege self-interest.

The assertion that Modany wanted to continue his employment and receive compensation and refused to resign does not state a disqualifying self-interest.  The Trustee merely alleges, without any substantiation, that "ACICS wanted ITT to terminate Modany[,]" Complaint, ¶ 26, and that "[t]he SEC also made clear its desire for Modany's termination."  *Id*. ¶ 27.  The Trustee also alleges, "it was not in Modany's own personal interests to either step down."  *Id.* ¶ 28.  None of these assertions is supported, and courts have rejected similar allegations as insufficient.

In *Orman v. Cullman*, the Chancery Court considered allegations of self-interest that a defendant desired to maintain his membership on the board of directors in order to receive the fees paid to the directors, and concluded that allegations of entrenchment motives without a factual basis are insufficient to state conflicting self-interest.  794 A.2d 5, 28-29 (Del. Ch. 2002).  The

court concluded, "[e]ven if I were to infer that Orman was alleging that the fees Barnet was to receive as a director with the surviving company created a disabling interest, without more, that assertion would also fail. Because Orman alleges no facts in addition to the assertion of *continued board membership* on the part of Barnett, his assertion of interest fails as a matter of law." *Id.* at 29 (emphasis added). Likewise, here the assertion of continued employment on the part of Modany and attendant receipt of compensation is not a sufficient assertion of interest. The allegation that Modany refused to resign fails as a matter of law to state a claim of breach of the duty of loyalty.

### iii.    The allegation that Modany did not admit to fraud fails to state self-interest.

The Trustee asserts that Modany breached his fiduciary duty of loyalty by not admitting to fraud. Complaint, ¶¶ 27-29, 31, 35. The Trustee also asserts that Modany breached the duty of loyalty by not causing ITT to admit to fraud in connection with an SEC investigation and subsequent litigation. *Id*. ¶¶ 34, 35 ("The Directors were further advised that the SEC had previously made it clear that it had no interest in a settlement, even in the context of a transaction, without both ITT and the individuals (e.g., Modany) admitting to fraud."). These allegations fail as a matter of law for a few reasons.

First, the Complaint fails to allege any underlying fraud, to the extent any had occurred. Instead, the Complaint merely asserts, Modany "was responsible for implementing, continuing, participating in and/or cultivating a culture at ITT that encouraged much of the misconduct alleged in the lawsuits" without identifying any of the alleged misconduct. *Id*. ¶ 27. This allegation fails to specify the nature of the fraud, much less how Modany was involved or what Modany did. The Complaint's amorphous allegations fail to meet *Iqbal*'s plausibility standard.[3]

---

[3]    To the extent the Complaint is asserting a disguised fraud claim against Modany, the allegations not only have to meet the *Iqbal* plausibility standard, but also the heightened standard under Rule 9(b). *See Graue Mill Dev.*

Moreover, the Complaint fails to allege how Modany's refusal to admit to fraud or cause ITT to admit to fraud was a breach of fiduciary duty. Officers are not required to be martyrs in order to meet their duties of loyalty. *Mann v. GTCR Golder Rauner, L.L.C.*, 483 F. Supp. 2d 884, 906 (D. Ariz. 2007) (observing under Delaware law "although the fiduciary duties of due care and loyalty encompass a variety of obligations, self-sacrifice is not among them"); *see also Jedwab v. MGM Grand Hotels, Inc.*, 509 A.2d 584, 598 (Del. Ch. 1986). If officers were required to plead guilty to fraud every time their employer was under investigation in order to avoid committing a breach of their duty of loyalty, no rational individual would agree to serve as a corporate officer. Likewise, corporate executives are not required to force their employers to admit to fraud in order to uphold their duty of loyalty. *See Mann*, 483 F. Supp. 2d at 906 (observing the duty of loyalty is not boundless). Given that the Trustee has not pleaded *any factual basis* that Modany acted out of self-interest in refusing to admit to fraud or force ITT to admit to fraud, the Trustee is plainly seeking such *an inference* by the Court. That inference is not reasonable, and this Court should decline to draw it.

> ### iv. Allegations that Modany was in favor of or opposed to certain potential transactions or hiring decisions fail to allege self-interest.

Finally, the Trustee carefully selects quotations related to various transactions to seek the

---

*Corp. v. Colonial Bank & Trust Co. of Chi.*, 927 F.2d 988, 992 (7th Cir. 1991). To satisfy the requirement of Rule 9(b), a plaintiff pleading fraud must state "the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (internal quotation marks omitted)). Stated differently, a plaintiff pleading fraud must state "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) ("Heightened pleading in the fraud context is required in part because of the potential stigmatic injury that comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled."). The Complaint fails to plead at all, much less with particularity, any of the relevant circumstances of time, place, content of misrepresentation, identity, and benefit derived from the misrepresentation. Any allegations of fraud fail to meet Rule 9(b) and must be dismissed.

inference that Modany acted out of self-interest in supporting or opposing certain potential transactions or hiring decisions. Allegations regarding each transaction or decision fail to state a breach of the duty of loyalty, and they are no more successful when viewed together.

*U.S. Skills/THL*. The Trustee alleges Modany obstructed a potential transaction by refusing to admit to fraud or cause ITT to admit to fraud. Complaint, ¶ 35 ("The Directors were further advised that the SEC had previously made it clear that it had no interest in a settlement, even in the context of a transaction, without both ITT and the individuals (e.g., Modany) admitting to fraud."). However, as discussed *supra*, the Complaint failed to allege that Modany's refusal to admit fraud or cause ITT to admit fraud was a breach of the duty of loyalty.

Other than failing to admit to fraud himself or to force ITT to admit to fraud, the Complaint only alleges that "given his clear conflict of interest, Modany should have, at a minimum, recused himself from all discussions" and "Modany took affirmative efforts to undermine the U.S. Skills/THL offer by claiming that he had become increasingly doubtful about the seriousness of U.S. Skills/THL's offer and encouraged the Directors to cease discussions with U.S. Skills/THL[.]" *Id*. However, the Trustee bases Modany's obligation to recuse himself on a conclusory allegation ("given his clear conflict of interest," *id.*) Because the Trustee has not sufficiently alleged any conflict of interest, any obligation for recusal is merely a conclusory allegation and devoid of any factual basis. There is similarly no basis for the allegation that, to the extent Modany doubted the seriousness of the offer and discouraged the Board from continuing discussions, he did so acting out of self-interest. The Trustee cites one alleged Modany quote in support of her assertion: "The sooner we stop talking to these guys and wasting our time, resources and the globe's oxygen supply the better!" *Id*. This quotation suggests only that Modany was not in favor of continuing discussions and does not support any allegation of self-interest.

18

***Maintaining accreditation from ACICS and responding to demands from ED.***  The Complaint asserts, regarding ongoing negotiations with ACICS and ED, "Modany downplayed the risk of de-accreditation" and "pushed the Board to pursue a sale of the Company or its assets, but only on terms that were beneficial to Modany, personally."  *Id*. ¶ 29; *see also id*. ¶¶ 25, 41, 48. Other than the Trustee's bare assertion, the Complaint is devoid of any facts supporting a "downplaying" of risk.

The allegation that Modany put his own interest above ITT's in a potential sale is contradicted by the allegation that Modany pointed out at the April 25, 2016 board meeting that "the [ACICS] letter increased the need to pursue a transaction as soon as possible to avoid any potential collateral consequences of ITT's receipt of the letter." *Id*. ¶ 29.   In an attempt to allege that Modany put his own interests ahead of ITT's, the Complaint merely asserts Modany pursued transactions "that were beneficial to Modany[] personally."  Complaint, ¶ 29.   Delaware law, however, is not satisfied by a mere assertion of conflict of interest; instead, "Delaware law requires that a plaintiff plead facts." *In re Fedders N. Am., Inc.*, 405 B.R. at 541.  The allegations regarding ACICS and ED fail to allege Modany acted in self-interest such that he breached his duty of loyalty.

***Potential transactions with Genki, Starcore and DCF.*** The Complaint alleges that Modany opposed, or was skeptical of, potential transactions with prospective acquirors, but fails to allege facts that Modany acted out of self-interest.  With respect to the potential transaction with Genki, the Trustee alleges Rocco Tarasi, an ITT officer, "forwarded the inquiry on to Modany, stating, 'I'm going to ignore this unless you want otherwise.'  Modany replied, 'I think you know the answer...wild ass fishing!'"  Complaint, ¶ 39.  The statement does not allege facts sufficient to

19

infer that Modany determined not to pursue the offer because it did not benefit him personally, and therefore fails to state a breach of the duty of loyalty.

Similarly, with respect to the potential transaction with Starcore, the Trustee alleges:

On June 14, 2016, ITT received a letter of intent for a potential acquisition by Starcore Venture Group at $2.20 per share. But Defendants refused to investigate the potential value of this offer or engage Starcore in negotiations. Instead, wholly uninformed of the potential value of this offer, the Directors deferred to Modany's recommendation to reject the transaction based on Modany's speculation that it would leave insufficient residual value for shareholders.

*Id*. ¶ 44.

The Trustee acknowledges that Modany's concern was maximizing value for shareholders, and the characterization that this concern was "a farce" on the basis that ITT was "insolvent" is wholly conclusory, lacks any factual basis, and, in any event, fails to allege any personal interest related to the Starcore offer that would make this concern pretextual. Further, the Trustee's assertion that ITT was insolvent due to "a negative current asset ratio" as of June 30, 2016 is contradicted by the Complaint's own exhibits. Complaint, Ex. C, p. 2 (citing an assets-to-liabilities ratio of .72 included in ACICS's August 17 letter). The allegation related to the Starcore offer fails to state a breach of the duty of loyalty.

Finally, with respect to the potential transaction with DCF, the Trustee alleges, "Modany chose to pursue this transaction because DCF was willing to negotiate a side-deal with Modany that would have kept Modany involved as part of this transaction[,]" Complaint, ¶ 40, and that later, "that all changed when DCF – working with ED – changed the deal terms in a manner that no longer profited Modany." *Id*. ¶ 55. *Nothing* the Trustee pleads supports those allegations. Attempting to assert that Modany rejected the proposal out of self-interest, the Trustee alleges Modany responded, via email:

20

DCF can agree to do whatever they want post acquisition but ITT isn't agreeing to do anything that was suggested in your summary[:]

-change Management

-give ED authority over our compensation (they don't have it regardless of what they claim)

-accept a monitor

-etc, etc, etc

Of course you can do all of these things and you can commit to doing all of them as the new owners of the company post transaction so I don't think our position in any way impacts your ability to deliver to ED whatever it is you speculate will improve your chances for approval.

The issue is that ITT isn't going to do these things pre acquisition . . . .

*Id*.

Even with this alleged statement, the Complaint fails to plead self-interest. First, in the very next paragraph of the Complaint, the Trustee acknowledges that the foregoing was a recitation of the Board's view. *Id*. ¶ 56. Further, even if Modany's alleged email was illustrative of his own opinion, as discussed *supra*, the mere alleged desire to continue one's employment and to continue to receive compensation does not state a disqualifying self-interest. *See supra*, Section IV.A.2.b. Moreover, the Complaint does not support the conclusion that Modany ever abandoned the DCF transaction, an assertion that is contradicted by the message that ITT did not believe its position "in any way impact[ed] [DCF's] ability to deliver to ED whatever it is you speculate will improve [DCF's] chances for approval." *Id*. ¶ 55. Therefore, the allegation related to the DCF offer fails to state a breach of the duty of loyalty.

***Hiring of restructuring specialists.*** The Trustee alleges, "Modany refused to retain FTI [Consulting] or any other restructuring professional," such as Alvarez & Marsal. *Id*. ¶ 47. The Trustee fails to allege, however, that Modany opposed the hiring for any self-interested reason. The Trustee similarly fails to allege that hiring of any restructuring specialists would have affected

21

Modany's personal interests. Therefore, the allegation related to Modany's refusal to hire restructuring specialists fail to state a breach of the duty of loyalty.

### v. The Foregoing Allegations, Taken Collectively, Are Insufficient to State a Claim of the Breach of Duty of Loyalty.

Not only are the allegations related to potential transactions or hiring decisions fail individually insufficient to state a claim of a breach of the duty of loyalty, they similarly fail as a collective. The layering of one factually deficient allegation upon another does not improve these allegations. *See Iqbal*, 556 U.S. at 679. Indeed, nothing the Trustee states shows anything other than an alignment of interests between Modany and ITT, undercutting the reasonableness of any inference that Modany would have put his interests before ITT's. *See Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (observing a court's responsibility to evaluate the plausibility of a claim and that the motion to dismiss standard does not require the court to accept without question those allegations and inferences that are not supported by specific facts or are undermined by contradiction). Where a claim depends on certain allegations but those allegations are conclusory or contradicted by other pleading, the claim fails to attain facial plausibility. *See Iqbal*, 556 U.S. at 681 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The Complaint fails, in its entirety, to state a claim for the breach of the duty of loyalty.

### 3. The Complaint Fails to Adequately State a Claim for Breach of the Duty of Good Faith.

The duty to act in good faith is a subset of the duty of loyalty, requiring a plaintiff to show conduct that is "more culpable than[] conduct giving rise to a violation of the fiduciary duty of care." *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 369 (Del. 2011) (citing

*Disney II*, 906 A.2d at 67). A breach of the duty of faith requires a plaintiff to demonstrate one of three scenarios: (1) "the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation;" (2) "the fiduciary acts with the intent to violate applicable positive law;" or (3) "the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." *Id.* (quoting *Disney II*, 906 A.2d at 67). Thus, a breach of the duty of good faith requires "intentional conduct." *Disney II*, 906 A.2d at 65-66. Because of the element of scienter involved, establishing a breach of this duty is more difficult for a plaintiff than rebutting the presumptions of the business judgment rule. *In re Think3, Inc.*, 549 B.R. 147, 178-79 (Bankr. W.D. Tex. 2015) (applying Delaware law).

The third scenario is typically referred to as a *Caremark* claim due to the namesake case in which it was first articulated, *see In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996), and has been determined by at least one Bankruptcy Court sitting in Delaware to apply to officers as well as directors. *Miller v. McDonald* (*In re World Health Alternatives, Inc.*), 385 B.R. 576, 590 (Bankr. D. Del. 2008). The Delaware Supreme Court has expressly endorsed *Caremark* as articulating:

> the necessary conditions predicate for director oversight liability: (a) the directors utterly failed to implement any reporting or information system or controls; *or* (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention.

*Stone*, 911 A.2d at 370.

With respect to the *Caremark* standard, the Complaint appears only to assert breach of the duty of good faith claims against the Directors. *See* Complaint, ¶¶ 5-6, 65-66, asserting that the Directors:

- intentionally disregard[ed] their responsibilities by knowingly failing to investigate, secure, or make informed decisions regarding a transaction that might

not be in Modany's personal interest (e.g., a transaction involving his termination, a reduction in his compensation, and/or settlement of pending claims against ITT in a manner adverse to him); and

- intentionally disregard[ed] their responsibilities by knowingly failing to investigate, secure, or make informed decisions regarding an orderly wind down of ITT's operations either inside or outside of bankruptcy that would have maximized the value of ITT's remaining assets for its shareholders and minimized potential claims against ITT, including ensuring that ITT had in place a program for the teach-out of its current student body, complying with all applicable rules and regulations regarding the disposition of student records, and complying with all applicable employment laws. *Id*. ¶¶ 5, 65.

With respect to Modany, the Trustee does not assert any "intentional disregard," but rather that Modany "should have diligently pursued the above steps to benefit ITT, and if he was unable or unwilling to do so given the clear conflict of interest . . . he should have either recused himself from all decisions in which he had a personal conflict or stepped down as CEO and left the Company." *Id*. ¶¶ 6, 66.

First, the Trustee does not appear to make any claim against Modany for breach of the duty of good faith with respect to an intent to violate applicable positive law, the first scenario for such a breach. Nor is a *Caremark* claim asserted (or applicable) here. Even if such a claim is applicable to officers under Delaware law, the Trustee has not asserted that Modany failed to implement any reporting or information system or controls; *or* (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling himself from being informed of risks or problems requiring his attention. To the contrary, there is only one suggestion in the Complaint that Defendants failed to investigate a potential acquisition, with Starcore Venture Group, which Modany allegedly rejected out of hand based on "speculation" that the transaction "would leave insufficient residual value for shareholders." Complaint, ¶ 44. Even assuming those facts are true, one instance of determining not to investigate a transaction does not rise to the level of failure to monitor. *See Disney II*, 906 A.2d at 61 (noting the standard of the duty of care of

informing oneself of "all information reasonably available").

The Trustee also fails to assert a claim for breach of good faith arising from intentional acts with a purpose other than that of advancing the best interests of ITT. As discussed in Sections III.A.1 and III.A.2, the Complaint is rife with assertions that Modany's continued employment as chief executive officer, and possible severance package, created conflicts that should have caused Modany to resign and/or to plead fraud. Complaint, ¶¶ 11, 26, 27-29, 31, 32, 34, 35, 49. Similar to an assertion of a breach of loyalty, mere entrenchment is not sufficient to claim a breach of the duty of good faith. *In re Fedders*, 405 B.R. at 542 (disregarding argument that the outside directors intentionally acted against the interest of Fedders by seeking to avoid filing for bankruptcy so as to remain in office and continue collecting director fees, and noting that simple allegations of such "entrenchment motives," without more, are insufficient to state a claim that directors are financially interested). Similarly, the existence of the possibility of receiving severance does not state a conflicting interest. *Huff Energy Fund, L.P.*, 2016 WL 5462958, at *11 (granting motion to dismiss and noting "possibility of receiving change-in-control benefits pursuant to pre-existing employment agreements does not create a disqualifying interest as a matter of law" (citation omitted)); *see also supra* Section III.B.2.b.

Rather, a claim for breach of good faith requires the Trustee to meet a higher standard that is not present here. *See, e.g.*, *Liquid Holdings Grp.*, 2018 WL 2759301, at *12 (liquidating trustee's complaint alleging fraudulent conduct with respect to certain reliance misrepresentations stated a claim of duty of good faith). Here, the Trustee has failed to plead a claim for breach of good faith, and, in fact, has failed to make any claim for breach of fiduciary duty.

B.    *__The Complaint Fails to State a Claim for Equitable Subordination__*

    1.    *__Equitable Subordination Under Section 510(c) of the Bankruptcy Code is Not Available Here.__*

A bankruptcy court may exercise its authority of equitable subordination under Section 510(c) of the Bankruptcy Code if "it determines that the claimant is guilty of misconduct that injures other creditors or confers an unfair advantage on the claimant." *In re Kreisler*, 546 F.3d 863, 866 (7th Cir. 2008). Equitable subordination is appropriate only if the following three-factor test is met: (1) the creditor engaged in inequitable conduct; (2) the conduct resulted in injury to other creditors or an unfair advantage for the claimant; and (3) subordination of the debt would not be inconsistent with other Bankruptcy Code provisions. *Id*. (citing *United States v. Noland*, 517 U.S. 535, 538-39 (1996); *Matter of Lifschultz Fast Freight*, 132 F.3d 339, 344 (7th Cir. 1997).

The Seventh Circuit has made clear that the "search for inequitable conduct" is "the first step." *Matter of Lifschultz Fast Freight*, 132 F.3d at 344. Moreover, "[i]f there is none, then a bankruptcy court cannot subordinate a claim." *Id.* (also observing "[t]his insistence on first finding inequitable conduct was the law before codification in 11 U.S.C. § 510(c), and it remained so afterwards"). Generally, "[t]he creditor must have done something inequitable—a wrong or an unfairness or, at the very least, a masquerade of something for what it is not. In the context of equitable subordination, the type of conduct that has been considered 'inequitable' generally falls within the following categories: '(1) fraud, illegality, breach of fiduciary duties; (2) undercapitalization; and (3) claimant's use of the debtor as a mere instrumentality or alter ego.'" *Matter of Lifschultz Fast Freight*, 132 F.3d at 344-45 (citation omitted); *accord Kreisler*, 546 F.3d at 866.

Where the claimant is an insider, its dealings with the debtor will be subject to closer scrutiny than if the claimant is a non-insider. *Kreisler*, 546 F.3d at 866 n.1 ("Courts subject the

dealings of an insider to 'rigorous scrutiny' for inequitable conduct." (internal quotation marks omitted)); *see Sender v. Bronze Grp. (In re Hedged-Invs. Assocs.)*, 380 F.3d 1292, 1301-02 (10th Cir. 2004) ("Where the claimant is an insider or a fiduciary, the party seeking subordination need only show some unfair conduct, and a degree of culpability, on the part of the insider.").  Although the standard is more stringent for an insider, the Trustee must offer "some substantial factual basis to support its allegation of impropriety." *Matter of Lifschultz Fast Freight*, 132 F.3d at 344.  Indeed, the Seventh Circuit has held that the mere fact of an insider relationship between a debtor and a claimant is, without more, insufficient for equitable subordination.  *Id.* at 345 ("That the insiders made a secured loan to the company is not wrongful per se . . . . An insider to a company is free to lend money to it . . . .").  A breach of fiduciary duty is one basis for a finding of inequitable conduct.  *See Hedged-Invs. Assocs.*, 380 F.3d at 1301 ("'Inequitable conduct' for subordination purposes encompasses . . . breach of fiduciary duties . . . .").

Nevertheless, the Complaint has failed to articulate a claim for equitable subordination.  Modany's alleged "willful" breaches of fiduciary duty are the Trustee's sole basis for the equitable subordination of his claim.  Complaint, ¶ 71 ("As described in this complaint, Modany engaged in inequitable conduct by willfully breaching his fiduciary duties to ITT.").  Although there are other bases on which a court can find inequitable conduct has occurred, the Trustee has not alleged any.  Thus, a finding that Modany acted inequitably here must turn on a determination that Modany breached his fiduciary duties.  Since, as further described in Section II.A, the Trustee's claims for breach of fiduciary duty are not sustainable, the equitable subordination claim under Section 510(c) of the Bankruptcy Code must similarly fail.

### 2. *Section 105(a) of the Bankruptcy Code Does Not Offer an Alternative Basis for Equitable Subordination.*

The Trustee cites Section 105(a) of the Bankruptcy Code as an alternative basis for

subordinating Modany's general unsecured claim. *See* Complaint, ¶ 72. Section 105(a), which confers a general equitable power upon the Bankruptcy Court,[4] but does not permit a court to substitute its judgment where another section of the Bankruptcy Code explicitly applies. *See Law v. Siegel*, 571 U.S. 415, 421 (2014) ("It is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'" (citation omitted)). To the extent the Trustee seeks to equitably subordinate Modany's claims, the appropriate statutory test arises only under Bankruptcy Code Section 510(c), and there is no discretionary alternative. Thus, the claim for equitable subordination must fail.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Modany respectfully requests that the Court enter an order dismissing the Adversary Complaint with prejudice under Rule 12(b)(6).

---

[4] Section 105(a) provides in relevant part as follows:

The court may issue any order . . . or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Dated:  August 24, 2018

Respectfully submitted,
/s/ Philip A. Whistler

**ICE MILLER LLP**
Philip A. Whistler
Jeff Hokanson
One American Square, Suite 2900
Indianapolis, IN 46282-0200
Telephone: (317) 236-2100
Facsimile: (317) 236-2219
Email: philip.whistler@icemiller.com
         jeff.hokanson@icemiller.com

John Cannizzaro
Arena District, 250 West Street, Suite 700
Columbus, OH 43215-7509
Telephone: (614) 462-2700
Facsimile: (614) 462-5135
Email: john.cannizzaro@icemiller.com

**MORGAN, LEWIS & BOCKIUS LLP**
John C. Goodchild, III (pro hac vice pending)
Rachel Jaffe Mauceri (pro hac vice)
1701 Market Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
Email: john.goodchild@morganlewis.com
         rachel.mauceri@morganlewis.com

Elaine V. Fenna (pro hac vice)
101 Park Avenue
New York, New York 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001
Email: elaine.fenna@morganlewis.com

*Counsel to Kevin M. Modany*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of August, 2018, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following counsel through the Court's Electronic Case Filing System, to which counsel have access.

**Richard Allyn**   rallyn@robinskaplan.com
**Thomas Berndt**   tberndt@robinskaplan.com, jgerboth@robinskaplan.com
**John Cannizzaro**   john.cannizzaro@icemiller.com, Deborah.Martin@icemiller.com
**Michael Anthony Collyard**   mcollyard@robinskaplan.com, rhoule@robinskaplan.com
**Elaine Victoria Fenna**   elaine.fenna@morganlewis.com
**Gregory Forrest Hahn**   ghahn@boselaw.com, jmcneeley@boselaw.com
**John C. Hoard**   johnh@rubin-levin.net, jkrichbaum@rubin-levin.net;atty_jch@trustesolutions.com;sturpin@rubin-levin.net
**Jeffrey A Hokanson**   jeff.hokanson@icemiller.com, Kathy.peed@icemiller.com
**Carly Kessler**   ckessler@robinskaplan.com
**Vilda Samuel Laurin**   slaurin@boselaw.com
**Rachel Jaffe Mauceri**   rachel.mauceri@morganlewis.com
**James P Moloy**   jmoloy@boselaw.com, dlingenfelter@boselaw.com;mwakefield@boselaw.com
**Ronald James Schutz**   rschutz@robinskaplan.com
**U.S. Trustee**   ustpregion10.in.ecf@usdoj.gov
**Paul D. Vink**   pvink@boselaw.com, clindsey@boselaw.com
**Philip A. Whistler**   philip.whistler@icemiller.com, carla.persons@icemiller.com


/s/ Philip A. Whistler
Philip A. Whistler