UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE:<br><br>ITT EDUCATIONAL SERVICES, INC., ESI SERVICE CORP., and DANIEL WEBSTER COLLEGE, INC.<br><br>       Debtors. | Case No. 16-07207-JMC-7A<br><br>Jointly Administered |
| DEBORAH J. CARUSO, the Chapter 7 TRUSTEE FOR ITT EDUCATIONAL SERVICES, INC., ESI SERVICE CORP. and DANIEL WEBSTER COLLEGE, INC.<br><br>       Plaintiff,<br>vs.<br><br>KEVIN MODANY, JOHN E. DEAN, C. DAVID BROWN II, JOANNA T. LAU, THOMAS I. MORGAN, JOHN VINCENT WEBER, JOHN F. COZZI, SAMUEL L. ODLE, and JERRY M. COHEN,<br><br>       Defendants. | Adversary No. 1:18-AP-50100-JMC |

**FORMER DIRECTORS' REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS COMPLAINT**

John E. Dean, C. David Brown II, Joanna T. Lau, Thomas I. Morgan, John Vincent Weber, John F. Cozzi, Samuel L. Odle, and Jerry M. Cohen (collectively, "Former Directors"), by counsel, pursuant to Fed.R.Bankr.P. 7012(b) and Fed.R.Civ.P. 12(b)(6), respectfully submit the following Reply Brief in support of their Motion to Dismiss.

### INTRODUCTION

The Trustee faces one of the most daunting legal standards in her pursuit of breach of fiduciary duty claims against the Former Directors. Realizing this, the Trustee claims that (1) this Court cannot consider an exculpatory clause or the business judgment rule on a motion to

1

dismiss, and (2) the Former Directors did not exercise business judgment when they elected not to pursue certain courses of action the Trustee believes they should have. Both of these efforts to avoid the business judgment rule fall flat. This Court can and must consider substantive components of Delaware law like an exculpatory clause and the business judgment rule (a fact that the Trustee's own cases make clear), and a decision to not pursue a certain strategy is every bit the exercise of business judgment as deciding to pursue it. The Trustee erroneously contends that because the Former Directors adopted a different strategy than, in hindsight, she believes they should have, the Former Directors failed to take any action or exercise business judgment. The business judgment rule, coupled with the exculpatory clause discussed more fully below, provide a barrier too great for the Trustee to surmount in light of the allegations in the Complaint. Dismissal is proper.

## ARGUMENT

**I.  This Court Can and Should Consider the Exculpatory Clause and Business Judgment Rule on a Motion to Dismiss.**

The exculpatory clause in ITT's Articles of Incorporation[1] and the business judgment rule are fatal to the Trustee's claims. The Trustee knows this, and thus seeks to keep her claims alive

---

[1] The exculpatory clause in ITT's Articles of Incorporation is based on, and very similar to, 8 Del. Code Ann. § 102(b)(7):

> Section 7. No director shall be liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director; provided, however, that to the extent required by the provisions of Section 102(b)(7) of the General Corporation Law of the State of Delaware or any successor statute, as the same may be interpreted or amended from time to time, or any other laws of the State of Delaware, nothing contained in this Section 7 shall eliminate or limit the liability of a director (a) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (b) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (c) under Section 174 of the General Corporation Law of the State of Delaware, (d) for any transaction from which the director derived an improper personal benefit or (e) for

2

by contending that the Court cannot consider these powerful defenses on a motion to dismiss because the Trustee strategically avoided mentioning the business judgment rule or exculpatory clause in its Complaint. Response, pp. 21-25. The Trustee is incorrect.

The very cases the Trustee repeatedly cites to in her Response demonstrate that the business judgment rule and an exculpatory clause should be considered at the motion to dismiss stage. *Bridgeport, McMullin, and Enivid* – all cases on which the Trustee heavily relies in her Response – analyze the business judgment rule and/or an exculpatory clause in the context of a motion to dismiss. In *Enivid*, the court explicitly stated:

> In evaluating the merits of the Defendants' Motions to Dismiss to the Fiduciary Duty Counts, the Court must consider two affirmative defenses, the Delaware business judgment rule and the exculpatory clause contained in [Defendant's] Certificate of Incorporation. These two defenses are the subject of many decisions in cases where defendants have sought dismissal of complaints containing allegations such as those in this adversary proceeding.

*In re Enivid, Inc.*, 345 B.R. 426, 442 (Bankr. D. Mass. 2006) (applying Delaware law). In *Bridgeport*, the Court spent several pages analyzing the business judgment rule and exculpatory clause in response to a motion to dismiss. *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 567-572 (Bankr. D. Del. 2008). Indeed, the *Bridgeport* Court could not have been clearer: "'A defense under [8 Del. Code Ann.] § 102(b)(7) may be considered in the context of a motion to dismiss.'" *Id.* at 567 (quoting *Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*, 2004 WL 1949290, at *9 n.38 (Del. Ch. Aug. 24, 2004)). And in *McMullin*,

---

any act or omission occurring prior to the date when this provision becomes effective. If the General Corporation Law of the State of Delaware hereafter is amended to authorize the further elimination or limitation of the liability of the directors, then the liability of a director of the Corporation, in addition to the limitation provided herein, shall be limited to the fullest extent permitted.

3

the Delaware Supreme Court mandated that the business judgment rule be considered on a motion to dismiss:

> In examining the Chemical Directors' motion to dismiss McMullin's Amended Complaint, the Court of Chancery was required to conduct a two-step analysis: first, to take the facts alleged as true and view all inferences from those facts in the light most favorable to the plaintiff; and, second, to determine whether with reasonable certainty, under any set of facts that could be proven, the plaintiff would succeed ***in rebutting the presumption of the business judgment rule***.

*McMullin v. Beran*, 765 A.2d 910, 917 (Del. 2000) (emphasis added).[2]

The Trustee does not explain why this Court is precluded from considering the business judgment rule and exculpatory clause while the central cases she relies upon state just the opposite. The business judgment rule is a presumption under Delaware law that the Trustee must rebut in the Complaint. *McMullin*, 765 A.2d at 917. The fact that the Trustee does not explicitly reference the business judgment rule or exculpatory clause on the face of the Complaint is not legally significant. The business judgment rule and the exculpatory provision invoking 8 Del. Code Ann. § 102(b)(7) are ***substantive*** rules of Delaware law appropriate for consideration on a motion to dismiss just like any other substantive legal principle. *In re IT Grp. Inc.*, No. 02-10118, 2005 WL 3050611, at *8 n.10 (D. Del. Nov. 15, 2005) (referring to the business judgment rule and stating, "This rule is a matter of substantive corporate law."); *In re LMI Legacy Holdings, Inc.*, 2017 WL 3432366, at *2 (Bankr. D. Del. Aug. 10, 2017) ("The use of an exculpatory clause to form a basis upon which to dismiss a breach of fiduciary duty claim on a motion to dismiss is just as substantive as it could be procedural, and as such, the Court was correct in its application and subsequent determination to dismiss the breach of fiduciary duty

---

[2] The Trustee is critical of the Former Directors for citing derivative cases involving Delaware Chancery Rule 23.1 while arguing that the business judgment rule is a proper consideration on a motion to dismiss. Response, p. 23. However, the cases cited by the Trustee herself have so held.

claims on such a basis."). If the Trustee's claims, even construed in her favor, could not rebut the presumptions of the business judgment rule or overcome the plain language of the exculpatory clause based on 8 Del. Code Ann. § 102(b)(7), she has not stated a plausible claim for relief.

The Trustee cites to *In re Simplexity, LLC*, No. 14-10569, 2017 WL 65069, at *6 (Bankr. D. Del. Jan. 5, 2017) for the proposition that an exculpatory clause cannot be considered on a motion to dismiss. Response, p. 24. However, numerous other Delaware cases – including several cited by the Trustee – state the polar opposite. *See,e.g., Bridgeport*, 388 B.R. at 567 ("A defense under § 102(b)(7) may be considered in the context of a motion to dismiss.") (internal quotation omitted); *Elkins*, 2004 WL 1949290, at *9 n.38 (same). The Delaware Supreme Court put it this way in affirming the dismissal of a complaint based on an exculpatory clause:

> [W]e have held that the amended complaint here does not allege a loyalty violation or other violation falling within the exceptions to the Section 102(b)(7) exculpation provision. Likewise, we have held that, even if the plaintiffs had stated a claim for gross negligence, such a well-pleaded claim is unavailing because defendants have brought forth the Section 102(b)(7) charter provision that bars such claims. This is the end of the case.

*Malpiede v. Townson*, 780 A.2d 1075, 1094–95 (Del. 2001).

Even *Simplexity* acknowledges that an exculpatory clause can be considered on a motion to dismiss regarding the duty of care. *Simplexity*, 2017 WL 65069, at *6 (stating that consideration of an exculpatory clause is "limited to violations of the fiduciary duty of care") (citing *In re Midway Games, Inc.*, 428 B.R. 303 (Bankr. D. Del. 2010) (dismissing a duty of care claim based on an exculpatory clause in response to a motion to dismiss)). As discussed at length on pages 13 through 21 of the Former Director's opening brief, the Trustee failed to adequately allege a breach of loyalty or bad faith. The exculpatory clause, then, compels the dismissal of the only remaining claim – the claim that the Former Directors breached their duty of care. That is precisely the rationale employed in *Malpiede*.

The Trustee primarily relies on *In re Tower Air, Inc.* in support of her argument that this Court is precluded from considering the business judgment rule (Response, pp. 21-22), but that is unavailing for several reasons. First, *Tower Air* itself states, "A complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face." *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005). Indeed, the *Tower Air* Court ultimately **did** consider the business judgment rule and dismissed the fiduciary duty claims, consistent with its oft-quoted statement that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task." *Id.* Here, the Trustee places the decision-making of the ITT Board squarely at issue in the Complaint by challenging the decision not to pursue certain acquisitions, not to engage in a teach-out, and to refer initial analysis of potential transactions to Modany.

Second, the fact that the Trustee avoids using the words "business judgment" in the Complaint does not strip this Court of the power to apply substantive Delaware law. Were that the law, a plaintiff could negate a substantive feature of Delaware law by merely not being foolish enough to mention it. Such logic has been rejected in Delaware and elsewhere. *In re IT Grp. Inc.*, No. 02-10118, 2005 WL 3050611, at *8 n.10 (D. Del. Nov. 15, 2005) ("Thus, plaintiffs are given a powerful and perverse incentive to 'dummy-up' about the obvious implications of the business judgment rule when drafting their complaints in the first instance."); *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645 (N.D. Tex. 2011) (rejecting the notion that the business judgment rule can only be asserted by directors after discovery).

Third, the same tactic employed by the Trustee has been rejected in other cases. In *Kaye*, 453 B.R. at 678-79, the Court faced the same argument on a motion to dismiss – that the business judgment rule was an affirmative defense not appropriate for a motion to dismiss.

> Delaware courts, applying Delaware procedural rules, require plaintiffs asserting claims for breach of fiduciary duty to make such allegations in order to

6

withstand a motion to dismiss for failure to state a claim: "Procedurally, the plaintiffs have the burden to plead facts sufficient to rebut the [business judgment rule's] presumption. On a motion to dismiss [for failure to state a claim], the pled facts must support a reasonable inference that in making the challenged decision, the board of directors breached either its duty of loyalty or duty of care." *Gantler,* 965 A.2d at 705–06.

The Trustee disputes this position, relying on *In re Tower Air, Inc.,* in which the Third Circuit held that "[g]enerally speaking, [it] will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6)," unless the affirmative defense appears on the face of the complaint. *Stanziale v. Nachtomi (In re Tower Air, Inc.),* 416 F.3d 229, 238 (3d Cir.2005). The Trustee argues that the business judgment rule does not appear on the face of the Amended Complaint, and therefore, that he need not have alleged facts from which the Court can reasonably infer that the presumption is rebutted.

> ***The Court is not persuaded by the Trustee's argument. Delaware case law unambiguously holds that the plaintiff bears the burden of proof in rebutting the presumption of the business judgment rule.***

*Id.* at 678–79 (emphasis supplied); *see also In re DSI Renal Holdings, LLC*, 574 B.R. 446, 471-72 (Bankr. D. Del. 2017) ("A complaint may be dismissed under Rule 12(b)(6) where an unanswered affirmative defense appears on its face" and, in that instance, to survive a motion to dismiss, a plaintiff must "'plead around' the business judgment rule.")

The Trustee agrees that "Delaware law controls the Trustee's breach-of-fiduciary-duty claims" based on the internal affairs doctrine. Response, p. 10, n.4. Thus, the business judgment rule and exculpatory clause – both substantive Delaware corporate law principles – apply even at the pleadings stage.[3]

---

[3] In a related argument regarding the standard of review, the Trustee contends that the Former Directors improperly cited to derivative cases applying a heightened standard of review. Response, pp. 8-10. First, as the Standard of Review section in the opening brief makes clear, the Former Directors rely on the plausibility standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and its progeny. While the Trustee has cherry-picked a few derivative cases among many others cited by the Former Directors, this is largely a straw man argument because the Former Directors' central point is that the Court must consider the business judgment rule and exculpatory clause. Second, the Trustee's reliance on the pleading standard in

**II.     The Trustee Has Not Plausibly Pleaded Breach of Loyalty or Bad Faith.**

The fact that the business judgment rule and exculpatory clause are substantive legal principles properly before the Court is critical because they establish the proper standard of review. The Trustee must allege "an extreme set of facts" to plausibly plead around an exculpatory clause. *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243 (Del. 2009) (citations omitted). The duty of care is exculpated, leaving only a breach of duty of loyalty or bad faith. But a duty of loyalty requires allegations that the Former Directors attained improper personal benefits or knowingly disregarded their duties in an attempt to benefit themselves. *In re Trinsum Group, Inc.*, 466 B.R. 596, 611 (Bankr. S.D.N.Y. 2012) (applying Delaware law). There is no such allegation in the Complaint. Bad faith requires the extraordinary fact pattern of directors adopting an affirmative, severe attitude of "we don't care about the risks," such that it amounts to "intentional dereliction of duty, a conscious disregard for one's responsibilities." *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 63 (Del. 2006).

With respect to the business judgment rule, the Trustee must allege facts that plausibly demonstrate that there was no rational business purpose for the Former Director's decisions: "The rule posits a powerful presumption in favor of actions taken by the directors in that a decision made by a loyal and informed board will not be overturned by the courts unless it cannot be 'attributed to any rational business purpose.'" *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993) *decision modified on reargument*, 636 A.2d 956 (Del. 1994). The fact that things turned out poorly is irrelevant:

> Business decision-makers must operate in the real world, with imperfect information, limited resources, and an uncertain future. To impose liability on directors for making a "wrong" business decision would cripple their ability to

---

*Tower Air* – decided two years **before** *Twombly*'s more restrictive plausibility standard – is not controlling.

> earn returns for investors by taking business risks. Indeed, this kind of judicial second guessing is what the business judgment rule was designed to prevent ….

*In re Citigroup Inc. Shareholder Derivative Litig.*, 964 A.2d 106, 126 (Del. Ch. 2009).

In the Response, like in the Complaint, the Trustee continues to primarily advance a *Caremark*-based theory emanating from the core allegation that the Former Directors abdicated their responsibilities by deferring to Modany. The Trustee claims the Former Directors failed to adequately supervise Modany and ensure ITT was complying with Department of Education regulations, but fails to explain how those conclusory allegations rise to the level of demonstrating that the Former Directors, in bad faith, "utterly" and "intentionally" failed to supervise management in a "sustained or systematic" manner. *Stone v. Ritter*, 911 A.2d 362, 370, 372 (Del. 2006). Sustaining a *Caremark* claim "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Rich ex rel. Fuqi Int'l v. Chong*, 66 A.3d 963, 981 (Del. Ch. 2013) (citations omitted).

The Trustee repeatedly cites to *Stone*, both in support of her *Caremark* theory and in alleging bad faith. Response, pp. 16-17. But in *Stone*, the Delaware Supreme Court affirmed the dismissal of a *Caremark*-styled complaint that, like here, sought to "equate a bad outcome with bad faith" based on "hindsight." 911 A.2d at 373. In so doing, the Court held that a *Caremark* claim requires proof that directors intentionally refused to take any action even though they "knew that they were not discharging their fiduciary obligations." *Id.* at 370.

The Complaint does not allege that the Former Directors failed to take any action. To the contrary, the Complaint alleges that the Former Directors (1) consistently interacted with Modany, and other management, to such a degree that Modany complained about "meddling" by certain Former Directors (Compl. ¶¶ 50, 53, 57), (2) evaluated potential transactions (*id.* at ¶¶ 35, 39-40, 44, 56-57), (3) discussed regulatory demands and the impact on ITT if those demands

9

were not met (*id.* at ¶¶ 26, 43, 48), and (4) retained bankruptcy counsel to benefit from their counsel (*Id.* at ¶ 57). Indeed, after receiving the initial Show Cause letter, the Former Directors met twice the following week (*id.* at ¶ 35, 29), and Former Director Odle requested a conference call to discuss transaction options with management. *Id.* at ¶ 38. Just days after notification of the $150,000,000 increase in surety demanded by the Department of Education that doomed ITT, the Former Directors retained bankruptcy counsel and offered to have board members sit in on calls with Modany. *Id.* at ¶¶ 53, 57. The Complaint does not plausibly allege complete inaction or a conscious indifference on the part of the Former Directors sufficient to sustain the extremely high bar of a *Caremark* claim.[4]

While the Trustee asserts that the Former Directors took no action (even claiming the Former Directors exercised no business judgment) (Response, p. 23-24), her rhetoric in the Response cannot be squared with the Complaint. The reality is that the Former Directors made business decisions to not replace key pieces of management, including Modany, and to attempt to preserve ITT's value through a transaction rather than employ a liquidation and teach-out model. To be sure, these *are* business decisions – just not ones the Trustee (in hindsight) agrees with. *See, e.g., Brehm v. Eisner*, 746 A.2d 244, 262-63 (Del. 2000) (decisions relating to employment decisions are business decisions); *In re Orchard Enterprises, Inc. Stockholder Litig.*, 88 A.3d 1, 34 (Del. Ch. 2014) (decisions to enter into a transaction is the exercise of business judgment). Even if the business decisions to retain Modany, assign Modany primary

---

[4] The Trustee points out that factual inferences must be construed in her favor on a motion to dismiss. Response, pp. 25-27. Perhaps so, but the Court can also consider "any facts set forth in the complaint that undermine the plaintiff's claim." *Bogie v. Rosenburg*, 705 F.3d 603, 609 (7th Cir. 2013). And facts contained in exhibits to the Complaint should be given greater weight than inconsistent allegations. *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006) ("In addition [on a motion to dismiss], we will consider the exhibits attached to a complaint, but, where an exhibit conflicts with the allegations of the complaint, the exhibit typically controls.").

responsibility to vet transactions, and elect not to pursue a teach-out model were wrong or even foolish, no liability attaches: "[W]hether a judge or jury considering the matter after the fact, believes a decision substantively wrong, or degrees of wrong extending through 'stupid' to 'egregious' or 'irrational', provides no ground for director liability." *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996). The central purpose behind the business judgment rule is to prevent judicial second-guessing of business decisions after the fact. *Citigroup*, 964 A.2d at 126. The Trustee cannot elude this ironclad principle simply by claiming no business decisions were made.

The Trustee relies on several cases in support of the theory that the Former Directors abdicated their responsibilities by deferring to Modany. But none of these cases assist the Trustee, and some significantly undercut her theory. In *Bridgeport*, the board approved a "fire sale" of Micro Warehouse's assets for $28,000,000 just prior to filing for bankruptcy, although the company produced approximately $900,000,000 of revenue annually. 388 B.R. at 558. The board approved the sale based on the recommendation of an outside restructuring specialist who had been appointed as chief operating officer just days before the sale, and despite virtually no efforts to first market the company to other potential buyers. *Id.* at 556-57. Not surprisingly on these facts, the Court found that the breach of fiduciary duty claim against the board could survive a motion to dismiss.

*Bridgeport* involved the fire sale of a company for a grossly inadequate amount without shopping the market based on the urging of a consultant hired as chief operating officer just days before the sale was approved. *Id.* Here, there was no fire sale of assets at an artificially low price (or any sale at all for that matter), the Former Directors did not zero in on one transaction partner to the exclusion of all others, and the primary person investigating transaction options, Modany,

11

was the long-tenured CEO, not some consultant with less than a weeks' experience at the company. *Bridgeport* does not resemble the facts of this case at all.

*McMullin* is equally inapposite. In *McMullin*, the board for ARCO Chemical Company ("Chemical") granted sole negotiating power for a sale of the company to the majority shareholder, who also happened to employ several members of Chemical's board. 765 A.2d at 915. The majority shareholder then negotiated a cash purchase price for all of Chemical's outstanding shares, which the Chemical board (controlled by the majority shareholder) approved. *Id.* at 915-16. The deal was structured as a cash deal, which was better for the majority shareholder's cash needs but resulted in a lower purchase price overall, and thus was a conflict of interest for the majority shareholder and members of the board. *Id.* at 921-22, 924. There was a single board meeting to consider the transaction at which the majority shareholder's financial advisor presented to the board reasons for approving the transaction. *Id.* at 921-22. Based on these facts, the Court found that breach of fiduciary duty claims should not have been dismissed. *Id.* at 925.

*McMullin* is similar to *Bridgeport* in that the board approved a sale for less than the company was worth, in an uninformed manner, and under time constraints. This case has none of those facts. There is no hurried transaction, no transaction for less than the fair market value, and no majority shareholder with a conflict of interest imposing its will on the minority shareholders to their detriment. Importantly, the *McMullin* Court specifically noted that delegating to the majority shareholder the ability to negotiate the sale was not a breach: "We agree that the Chemical Board could properly rely on the majority shareholder to conduct preliminary negotiations." *Id.*at 924. Rather, it was a breach that the board did not take measures to protect

12

minority shareholders, knowing that they would be harmed by the all-cash transaction. Again, there are no parallels to this case.

In *Clingman*, another case relied upon by the Trustee, the trustee alleged very specific violations of laws and regulations regarding the misuse of Title IV funds. *Clingman & Hanger Mgmt. Assoc., LLC v. Knobel et al.*, 2018 WL 2006763, at *9 (S.D. Fla., January 9, 2018) (stating the Complaint "alleges specific instances where Defendants violated DOE regulations knowing they were violating DOE regulations" and citing 34 C.F.R. § 668.21, the prompt disbursement rule in 34 C.F.R. § 668.162(b)(3), and numerous "additional detailed allegations"). By contrast, the Trustee in the Complaint barely even references a knowing violation of law. In paragraphs 5 and 65 of the Complaint while summarizing the basis for the breach of fiduciary duty claim, the only mention of violating laws is the passing reference to "applicable rules regarding the disposition of student records, and complying with all applicable employment laws" – neither of which are further elaborated on in the Complaint other than to say that ITT did not provide student records to applicable state agencies. Compl. ¶ 59. The detailed allegations in *Clingman* of specific statutory and regulatory provisions that were violated stand in stark contrast to the generic and undefined allegations of wrongdoing in the Complaint.[5]

And finally in *Enivid*, the defendant board members and officers were privy to critical financial information that they and the CEO concealed from the rest of the board. 345 B.R. at 437. The defendant directors voted in favor of numerous acquisitions pushed by the CEO and hid from the rest of the board the negative financial projections to keep them in the dark. *Id.* at 438-39. Not surprisingly, the Court found the trustee had sufficiently alleged bad faith and breach of

---

[5] The Trustee fails to provide any greater detail in the Response, instead once again simply making sweeping and vague accusations that the Complaint alleges the Former Directors "knowingly violated the law by failing to comply with ED regulations and other applicable laws and regulations …." Response, p. 17.

13

duty of care because defendants never once informed the other board members of their concerns about the company's true financial state. *Id.* at 446, 449-50. Here, the Trustee does not allege that any of the Former Directors kept secrets from the other Directors that caused inflated financial projections for ITT, or that some Former Directors were part of an "inner circle" with Modany who alone knew of the financial struggles of ITT. There is no suggestion that any Former Directors voted in favor of transactions they knew were bad for the company (indeed, the Trustee criticizes the Former Directors for ***not*** entering into a transaction). While the Trustee is fond of citing the foregoing cases and claiming that the Former Directors were "dominated" by Modany and "abdicated" their responsibilities in deference to him (Response, pp. 6, 11, 14, 15, 19), the facts alleged in the Complaint bear no resemblance to the cases on which the Trustee relies.

It is true that the Former Directors delegated to management the initial responsibility to analyze potential transactions, but such is the essence of business judgment. "An informed decision to delegate a task is as much an exercise of business judgment as any other." *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 943 (Del. 1985). The Delaware Chancery Court could not have been more clear on this point: "It is well within the business judgment of the Board to determine how merger negotiations will be conducted, and to delegate the task of negotiating to the Chairman and the Chief Executive Officer." *In re NYMEX S'holder Litig.*, 2009 WL 3206051, *7 (Del. Ch. Sept. 30, 2009). The Trustee seeks to circumvent this established principle by arguing the Former Directors "abdicated" their responsibilities, not delegated. But, as stated above, that sweeping accusation cannot be squared with the Complaint's allegations showing persistent board involvement. The Trustee has failed to surmount the extraordinarily high bar of claims for breach of loyalty or bad faith.

14

### III.     The Trustee's Attempt to Lump All Former Directors Together Is Improper.

The Former Directors demonstrated in their opening brief that, outside of John Dean, there are virtually no specific allegations against individual Former Directors sufficient to advise them of what they, individually, did wrong. This, despite the fact that individualized allegations of wrongdoing are required. *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Liability is personal. … Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed."); *In re Walt Disney Co. Derivative Litig*, 907 A.2d 693, 748 (Del. Ch. 2005) ("[L]iability of the directors must be determined on an individual basis ….").

The Trustee contends in her Response that "the Trustee's Complaint describes each Director's role and cites the Directors' own emails showing their individual misconduct." Response, p. 27. But that is flatly untrue. Former Directors Lau and Cozzi are mentioned only *once* in the entire Complaint, and then only to provide biographical information and allege they attended board meetings. Compl., ¶¶ 14, 17. Excluding the background paragraphs identifying them as board members, Former Directors Weber and Brown are referenced only *once* in the entire Complaint for emails discussing options in the face of the Department of Education mandates and offering support to Modany, respectively. *Id.* at ¶¶ 43, 57. The only allegations specific to Former Director Morgan is that he received an email from Modany and stated he trusted Modany – hardly fiduciary duty breaches. *Id.* at ¶¶ 49, 57. And most of the individualized allegations against Former Directors Odle and Cohen relate to irritation they caused Modany by providing contact information for restructuring specialists and other "meddling," which of course is completely at odds with the Trustee's claims. *Id.* at ¶¶ 38, 47, 50, 53, 57.

The Trustee devotes a page in the Response to summarizing the allegations leveled at Former Director John Dean, but the Former Directors had acknowledged in their opening brief that specific allegations were pleaded with respect to him. Response, pp. 28-29. As to the rest, the Trustee merely lumps them all together under the label "Directors" and even the less descriptive label "Defendants" that includes Modany. Compl. ¶¶ 4, 5, 25-27, 33-37, 39, 42-47, 53-56, 60, 62-65, 67. Courts have disapproved of such tactics and dismissed similar group-pleading claims. *In re Conex Holdings, LLC*, 514 B.R. 405, 414 (Bankr. D. Del. 2014); *Feldman v. Soon-Shiong*, 2018 WL 2124063, *5 (Del. Ch. May 8, 2018).

The Trustee seeks to excuse her lack of individualized allegations by claiming all Former Directors failed to take action – individually or collectively. Response, pp. 27-28. It remains a mystery what Former Director Cozzi should have done in the two weeks he was a director during the "Crisis Period" identified in the Complaint. And, once again, the Trustee's charge that the Former Directors took no action ignores that a decision not to pursue a particular transaction or course of action (like teaching out) *is* the exercise of business judgment. The Trustee equates a decision not to pursue a particular action with inaction that constitutes a dereliction of duty. But that is simply not true. A board need not say yes – and thereby show "activity" – to avoid breaching fiduciary duties. The Former Directors' decisions to reject certain transactions or decide against a teach-out model are the essence of business judgment. The Trustee's disagreement with those decisions or belief that they were unwise – viewed with the benefit of hindsight – does not impose liability as a matter of law. *Stone*, 911 A.2d at 373; *Citigroup*, 964 A.2d at 124. A plaintiff does not satisfy the "near-Herculaean task" of overcoming the business judgment rule so easily. *Tower Air*, 416 F.3d at 238. The Trustee's blanket allegations lumping

16

all Former Directors together (and sometimes all Defendants) is improper and requires dismissal of the Complaint.

## CONCLUSION

For the foregoing reasons, the Former Directors respectfully request that the Court dismiss the Trustee's Complaint in its entirety.

                Respectfully submitted,

                */s/ Paul D. Vink*
                Gregory F. Hahn, Attorney No. 10547-49
                V. Samuel Laurin, Attorney No. 11607-53
                James P. Moloy, Attorney No. 10301-49
                Paul D. Vink, Attorney No. 23783-32
                BOSE MCKINNEY & EVANS LLP
                111 Monument Circle, Suite 2700
                Indianapolis, Indiana 46204
                (317) 684-5000
                (317) 684-5173 (FAX)
                ghahn@boselaw.com
                slaurin@boselaw.com
                jmoloy@boselaw.com
                pvink@boselaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of November, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

Richard Allyn
rallyn@robinskaplan.com

Thomas Berndt
tberndt@robinskaplan.com
jgerboth@robinskaplan.com

John Cannizzaro
john.cannizzaro@icemiller.com
deborah.martin@icemiller.com

Michael Anthony Collyard
mcollyard@robinskaplan.com
rhoule@robinskaplan.com

Elaine Victoria Fenna
elaine.fenna@morganlewis.com

John C. Hoard
johnh@rubin-levin.net
jkrichbaum@rubin-levin.net
atty_jch@trustesolutions.com

Jeffrey A. Hokanson
jeff.hokanson@icemiller.com
kathy.peed@icemiller.com

Carly Kessler
ckessler@robinskaplan.com

Ronald James Schutz
rschutz@robinskaplan.com

U.S. Trustee
ustpregion10.in.ecf@usdoj.gov

Philip A. Whistler
philip.whistler@icemiller.com
carla.persons@icemiller.com

I further certify that on November 2, 2018, a copy of the foregoing was mailed by first-class United States mail, postage prepaid, and properly addressed to the following:

None

*/s/ Paul D. Vink*
Paul D. Vink

3525339/27062-3